IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHESTER LOWE HUFF, | § | |
|     TDCJ-CID #582855, | § | |
| v. | § | C.A. NO. C-11-149 |
| | § | |
| WARDEN NORRIS JACKSON, ET AL. | § | |

## OPINION AND ORDER DISMISSING CERTAIN CLAIMS AND RETAINING CASE

This is a civil rights action filed by a Texas state prisoner pursuant to 42 U.S.C. § 1983.

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 10 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee, or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam) (citations omitted). Plaintiff's pro se complaint must be read indulgently, see Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible. Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

Applying these standards, certain of plaintiff's retaliation claims are retained and service ordered on the defendants identified herein. Plaintiff's remaining claims against the remaining defendants are dismissed for failure to state a claim or frivolous pursuant to 28 U.S.C. §1915(e)(2)(B) and §1915A(b)(1).

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.  Upon consent of the plaintiff, (D.E. 12), this case was referred to a United States Magistrate Judge to conduct all further proceedings, including entry of final judgment.  (D.E. 13); see also 28 U.S.C. § 636(c).

## II. BACKGROUND

Plaintiff Chester Lowe Huff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division, and is currently incarcerated at the McConnell Unit in Beeville, Texas.  He filed this action on May 4, 2011, alleging that defendants were retaliating against him for filing grievances or otherwise exercising his right of access to the courts.  (D.E. 1).  He named the following individuals as defendants: (1) Assistant Warden Norris Jackson; (2) Officer Billy Raab; (3) Officer Sylvia Jimenez; (4) Officer David Herrera; (5) Officer Cantu; (6) Tamara McCullough; (7) Sandra Castaneda; (8) Nurse Dyanna Ainsworth; (9) Sergeant Angelica DelaGarza; (10) Sergeant David Garza; (11) A. Thompson; (12) Juan Garcia; and (13) K. Tollette.

On May 4, 2011, plaintiff filed a pleading entitled "motion to state a claim for relief," which is construed as a motion to supplement to his original complaint.  (D.E. 2).  On May 16, 2011, he filed a motion to amend.  (D.E. 11).  On May 19, 2011, he filed a number of "declarations" executed by himself or other offenders to further detail and support his claims.  (D.E. 14, 15).

A Spears[1] hearing was conducted on May 26, 2011, at which time plaintiff was granted leave to name Cheryl Lawson, an assistant regional grievance investigator, and Francis Cook, a safety coordinator, as defendants. The following allegations were made in plaintiff's original complaint, (D.E. 1), supplement to his complaint, (D.E. 2), his amended complaint, (D.E. 11), his individual declaration (D.E. 14, Ex. A), or at the hearing.

Plaintiff was placed in administrative segregation on April 20, 2010, for threatening to escape. On July 21, 2010, Warden Jackson recommended that plaintiff be retained in administrative segregation for another six months.

In November 2010, plaintiff complained to prison officials that a shower in administrative segregation was hazardous and unsanitary. Specifically, he complained to Lieutenant Stroley and Sergeant Ramirez about the shower. Thereafter, Sergeant Ramirez ordered that the unsafe shower not be used until it was repaired. However, numerous officers continued to force inmates to use the unsafe shower, and, if the inmates refused to do so, they were given disciplinary cases or denied meals.

On December 15, 2010, Nurse Ainsworth gave plaintiff a disciplinary case for masturbation. He denied the charges, and asked Sergeant DelaGarza, who was investigating the incident, to contact the officer who had escorted Nurse Ainsworth at the time of the incident. Sergeant DelaGarza refused, indicating that no officer had escorted Nurse Ainsworth to plaintiff's cell.

Between December 16, 2010 through January 22, 2011, Sergeant DelaGarza came to plaintiff's cell once or twice a day when she was working, and shined a flashlight in his face

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

while he was sleeping, or kicked his door, to wake and harass him.  She would not do this to the other inmates.

On January 31, 2011, Officer Raab ordered plaintiff to use the hazardous shower that had still not been repaired, and threatened him with a disciplinary case if he refused.

On February 2, 2011, Officer Jimenez ordered plaintiff to use the unsafe shower, and stated that if he did not, he would be denied a shower.  She was aware that the shower had not been fixed.

On February 9, 2011, Officer Herrera ordered plaintiff into the hazardous shower.  Thereafter, Officer Cantu retaliated against plaintiff and harassed him by refusing to give him his food tray.  Officer Herrera was aware that Officer Cantu denied him that meal.

On February 15, 2011, Investigator Castaneda retaliated and harassed plaintiff when she failed to investigate properly his grievances, did not take his complaints seriously, and confused the dates of his complaints.  He claims further that, on February 15, 2011, the shower was still not in compliance, but Ms. Castaneda erroneously noted that it was repaired.

On February 22, 2011, plaintiff filed a grievance complaining that Officer Herrera ordered him to use the unsafe shower and that Officer Cantu denied him a meal.  On February 28, 2011, he received a response denying the grievance.  Plaintiff complains that the grievance investigator did not investigate his claim.

On February 23, 2011, plaintiff talked to Warden Jackson about the shower hazard, and also told him that certain officers were responsible for the unsafe shower condition.  He also complained that he had received a bogus case from the medical department.  Warden Jackson replied that the disciplinary case was not bogus, and concluded that Sergeant DelaGarza had not

used racial slurs against plaintiff.  He told plaintiff that he was tired of seeing plaintiff's grievances come across his desk.

Since talking to Warden Jackson on February 23, 2011, plaintiff has received from Warden Jackson responses to Step 1 grievances he previously filed, and the answers have "nothing to do with my alleged complaints in my grievances."  Plaintiff claims that Warden Jackson is retaliating against him and purposely keeping him in administrative segregation.

On March 9, 2011, plaintiff had a hearing before the State Classification Committee. Warden Jackson recommended that plaintiff remain in administrative segregation for another six months.  Ms. Thompson told plaintiff that he was in administrative segregation "for threats to physical safety of others and the security of the institution."  Plaintiff related that he had been placed in administrative segregation because he was an "escape risk."  He accused Ms. Thompson of not knowing why he was in administrative segregation.  Ms. Thompson asked Major Castro to review plaintiff's disciplinary file, who reported to her that plaintiff was in administrative segregation for threatening to escape, to which plaintiff responded, "I told you." Ms. Thompson then documented this information in plaintiff's classification records.  Plaintiff then objected stating that he was falsely accused of trying to escape, and that he was tired of discrepancies in his file.

On March 11, and March 20, 2011, grievance investigators Ms. McCullogh and Ms. Castaneda both gave erroneous information in response to two of plaintiff's grievances.

On March 30, 2011, at 7:00 a.m., Officer Raab and Officer Jimenez came to plaintiff's cell to have him sign some forms.  Officer Jimenez questioned him about his complaints concerning the shower, and she then refused to let him sign the papers.  She falsely noted on the

paperwork that plaintiff refused to sign the forms. Thereafter, plaintiff did not eat his lunch for fear that Officer Raab or Officer Jimenez had put something in his food.

Later that day at 8:00 a.m., Sergeant Garza and about six other officers came to plaintiff's cell explaining that B-section was moving to D-pod. Plaintiff complained to Sergeant Garza about the earlier conduct of Officer Raab and Officer Jimenez, and Sergeant Garza said he would let plaintiff sign the paperwork after the move. However, on April 1, 2011, plaintiff received a copy of the forms that reflected he had refused to sign them.

Additionally on March 30, 2011, plaintiff was handcuffed and taken out of his cell for a shake down. He observed Officer Jimenez enter his cell and then stand on his mattress with dirty boots, which she then wiped all over the mattress.

Throughout March and April 2011, Juan Garcia and Cheryl Lawson have responded to plaintiff's step 2 grievances. However, they have failed to adequately address plaintiff's claims about the shower or officers, and they have offered inconsistent responses. Moreover, he alleges that Francis Cook lied about the cleanliness of the showers in responses to his grievances.

### III.  DISCUSSION

**A.     The Legal Standard For Screening Inmate Civil Rights Actions.**

Plaintiff's action may be dismissed for failure to state a claim upon which relief can be granted despite his failure to exhaust administrative remedies. 42 U.S.C. § 1997e(c)(2). It is well established that "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir.

1995) (per curiam). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed. Id. (citation omitted).

**B.     Plaintiff Asserts Several Claims Of Retaliation.**

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. See Perry v. Sinderman, 408 U.S. 593, 597 (1972). Retaliation is actionable only if the retaliatory act "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." Bibbs v. Early, 541 F.3d 267, 270 (5th Cir. 2008) (citation omitted). "A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995) (citation omitted). However, the Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." Adeleke v. Fleckenstein, 385 F. App'x 386, 387 (5th Cir. 2010) (per curiam) (unpublished) (citing Wood, 60 F.3d at 1166).

The Fifth Circuit has explained that "[t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights." Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006) (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)). However, some acts, even though they may be "motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person

from further exercise of his rights." Id. "Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." Id. For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. Id. at 687.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing McDonald v. Stewart, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "Mere conclusionary allegations of retaliation will not withstand a summary judgment challenge." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (citation omitted). The Fifth Circuit has further explained that an "inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may be plausibly inferred.'" Id. (citation omitted).

### 1. No chronology of events from which retaliation can be inferred or adverse retaliatory act is *de minimis*.

In this case, plaintiff exercised his First Amendment right to complain about the unsafe shower. He contends that, because he did so, certain defendants then: forced him to use the unsafe shower, or to receive a disciplinary case if he refused; gave him a false disciplinary case; denied him single meals; denied him single incidents of recreation; harassed him by stating he refused to sign forms on one occasion; failed to investigate his grievances; and kept him in administrative segregation.

The Fifth Circuit has not specifically defined "the quantum of injury necessary to constitute an 'adverse act' for purposes of a retaliation claim." Hart v. Hairston, 343 F.3d 762, 764 (5th Cir. 2003). However, the frequency and length of the retaliatory action are to be considered. For example, in Hart, the Fifth Circuit found that 27 days of cell restriction and loss of commissary privileges was not *de minimis*. Id. at 764-65. However, in Morris, the Fifth Circuit concluded that a ten-day loss of commissary privileges as punishment for a disciplinary offense was no more than a *de minimis* adverse act. 449 F.3d at 686. The Fifth Circuit has found that the denial of two meals over an eight-month period is *de minimis* and cannot support a claim of retaliation. Romero v. Lann, 305 F. App'x 242, 243 (5th Cir. 2008) (per curiam) (unpublished) (citing Morris, 449 F.3d at 684). Similarly, a single incident in which a prisoner is not allowed to eat is *de minimis*. Dickerson v. Johnson, 234 F.3d 29, 2000 WL 1568188, at *1 (5th Cir. Sept. 14, 2000) (per curiam) (unpublished). Denial of recreation on one occasion is a *de minimis* injury and does not constitute an "adverse retaliatory act," for purposes of stating a retaliation claim. Cf. Ford v. Jones, No. G-02-626, 2006 WL 3488954, at *2 (S.D. Tex. Dec. 1, 2006) (unpublished).

The majority of plaintiff's allegations against the named defendants fail to support his retaliation claims because there is no chronology of events from which retaliatory intent can be inferred. Moreover, his claims typically concern only single incidents in which a defendant allegedly denied a meal, or shower, or other privilege, which punishments are *de minimis* and do not establish an adverse retaliatory act.

Plaintiff claims that Nurse Ainsworth gave him a false disciplinary case for masturbation, and that Sergeant DelaGarza failed to investigate the disciplinary case properly because she refused to interview the officer that allegedly escorted Nurse Ainsworth to plaintiff's cell.

An essential element of a retaliation claim is the ability to show causation, i.e., that the complained of disciplinary case would not have occurred absent the retaliatory motive. Johnson v. Rodriguez, 110 F.3d at 310. Plaintiff complained about the shower to certain prison officials in November 2010, and in December 2010, he received a disciplinary case from Nurse Ainsworth for masturbation. No causal connection can be inferred between these facially unrelated events, occurring weeks apart and involving different departments, medical and security. Plaintiff does not allege that he previously filed a grievance against Nurse Ainsworth or that she knew he had complained about the shower, or that she ever ordered him to use the unsafe shower. Instead, he bases the retaliatory motivation on the fact that he has also sued other McConnell Unit medical providers who work with Nurse Ainsworth. There is no evidence of a retaliatory motive to suggest that Nurse Ainsworth gave him a disciplinary case because he complained about the shower or worked in the medical department. Plaintiff's allegations of retaliatory animus against Nurse Ainsworth are wholly conclusional, amounting to no more than his personal belief that he was retaliated against, and as such, are insufficient. See id.

Similarly, plaintiff's allegation that Sergeant DelaGarza retaliated against him in this incident by not interviewing a witness does not suggest a chronology of events from which retaliation can be inferred. Although plaintiff claims he was innocent of the disciplinary charge, there is no freestanding constitutional right to be free from malicious prosecution. Castellano v. Fragozo, 352 F.3d 939, 945 (5th Cir. 2003) (en banc). He offers no facts to demonstrate that, but

for complaining about the shower, he would not have received the disciplinary case or that it would have been investigated differently. Thus, plaintiff fails to state a claim of retaliation against Sergeant DelaGarza regarding the investigation of this disciplinary case.

Plaintiff claims that grievance investigators Sandra Castaneda, Tamara McCullough, Juan Garcia, K. Tollette, Cheryl Lawson and Francis Cook retaliated against him by failing to investigate properly his grievances concerning the shower itself, or concerning the conduct of the officers in forcing him to use the unsafe shower or retaliating against him. His "evidence" of the allegedly inadequate investigations is that his grievances were denied. He also claims that defendants' responses to his grievances did not always address his true complaints.

First, it is well settled that a prisoner has no constitutional right to have his grievances investigated in a certain manner, or for the investigating officers to reach a different conclusion. See Beall v. Johnson, 54 F. App'x 796, 2002 WL 31845615, at *1 (5th Cir. Dec. 12, 2002) (per curiam) (unpublished) (prisoner's allegation that he has a constitutionally protected right to have his grievance investigated and resolved is without merit because resolution of the grievance does not involve a "significant hardship ... in relation to the ordinary incidents of prison life") (quoting Sandin v. Conner, 515 U.S. 472, 485-86 (1995)); see also Taylor v. Cockrell, 92 F. App'x 77, 78 (5th Cir. 2004) (per curiam) (unpublished) (citing Sandin). Thus, the underlying conduct complained of does not raise a constitutional claim. Yet more specifically, plaintiff's characterization of this conduct as retaliatory is not supported by any facts. Taking plaintiff's allegations as true, that his grievances were not investigated thoroughly or the responses were unsatisfactory, he still fails to state a claim of retaliation against these defendants as he fails to establish that any grievance investigator had a motive to retaliate against him. He did not file

grievances against these defendants. Moreover, there are no facts to suggest that these defendants would act unfavorably toward a prisoner for pursuing his administrative remedies as the grievance process essentially provides these defendants with their jobs. Plaintiff fails to offer either direct evidence of motivation or allege a chronology of events from which retaliation may be inferred against these defendants, and accordingly, his claims against them are dismissed.

On January 31, 2011, Officer Raab handcuffed plaintiff and escorted him to the unsafe shower. When plaintiff protested, Officer Raab told him to either use the shower, or he would give him a major disciplinary case. Plaintiff conceded and used the unsafe shower; however, he filed a grievance against Officer Raab. Thereafter, Officer Raab indicated to plaintiff that he had put something in his food, and plaintiff was then fearful to eat, and did not eat, his lunch. This single incident of retaliatory behavior cannot sustain a retaliation claim.

Plaintiff claims that Officer Jimenez retaliated against him for filing grievances about the unsafe shower when, on February 3, 2011, she refused to call Sergeant Ramirez to confirm that the unsafe shower was not to be used, and also on that day, she refused to call medical even though plaintiff asked to see medical due to his depression. Plaintiff related that he was seen by the medical department on April 9, 2011, and told personnel then of his depression. He claims that Officer Jimenez also retaliated against him in March 2011, when, during a shakedown, she stood on plaintiff's mattress while attempting to look out a window, and then wiped her dirty boots all over his mattress. These incidents are *de minimis*.

Plaintiff testified that Officer Herrera joined in the retaliation on February 3, 2011 by not calling rank or a medical provider when requested to do so by plaintiff. Officer Cantu denied plaintiff a food tray on February 9, 2011, and on another date, denied him a shower. Again,

these incidents, even examined collectively, do not establish a retaliatory motive to punish plaintiff because he complained about the administrative segregation shower.

Plaintiff claims that on March 30, 2011, Officer Raab and Officer Jimenez came to his cell to obtain his signature on some forms. Officer Jimenez questioned plaintiff about a grievance he had filed against her, and in response, she refused to let him sign the forms and indicated that plaintiff refused to sign them. Later that day, plaintiff would not eat his lunch because he was afraid they had put something in his food. He complained to Sergeant Garza who indicated that he would get the papers back for him to sign, but he failed to do so. Even if these officers acted unprofessionally in response to a grievance, the adverse act was *de minimis*. As to Sergeant Garza, there is no evidence to suggest that his failure to get the papers to plaintiff to sign was anything but an oversight.

Plaintiff alleges that Ms. Thompson was unprepared for a hearing, and that she then relied on erroneous information in his file to detain him in administrative segregation. Even if true, these actions do not suggest retaliatory motive nor a chronology of events from which retaliation can be inferred. In fact, plaintiff offered no evidence to suggest that she knew about the shower or plaintiff's grievances concerning it.

Accordingly, plaintiff's retaliation claims against Nurse Ainsworth; grievance personnel Tamara McCullough, Sandra Castaneda, Juan Garcia, K. Tollette, and Cheryl Lawson; safety coordinator Francis Cook; and Officer Billy Raab, Officer Sylvia Jimenez, Officer David Herrera, and Sergeant David Garza are dismissed for failure to state a claim and as frivolous.

### 2. Plaintiff's Claims Of Retaliation Against Warden Jackson And Sergeant DelaGarza Are Retained.

For purposes of § 1915A, plaintiff has offered sufficient facts to state a retaliation claim against Warden Jackson, and Sergeant DelaGarza. He relates that he had a history of filing grievances concerning both the shower and the fact that officers would still force him to use the shower. Warden Jackson reviewed those grievances and expressed his frustration with plaintiff for filing them, stating that he was "sick and tired" of plaintiff, and as punishment, he would keep him in administrative segregation. Thereafter, Warden Jackson twice recommended that plaintiff remain in administrative segregation. Continued assignment to administrative segregation is clearly more than *de minimis*, and such a threat could certainly deter an inmate from exercising his right to file grievances.

Plaintiff alleged that Sergeant DelaGarza retaliated against him from December 16, 2010 through January 22, 2011, by coming to his cell, shining a flashlight in his face, and otherwise waking him by kicking his door with the intention to deprive him of sleep. Such harassment on a continual basis is retaliatory.

### IV. CONCLUSION

For the reasons stated above, the Court retains plaintiff's retaliation claims against Assistant Warden Norris Jackson and Sergeant Angelica DelaGarza, and service shall be ordered on these defendants.

Plaintiff's remaining claims against the remaining defendants are dismissed with prejudice for failure to state a claim and as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

Moreover, plaintiff's motion to state a claim of relief, (D.E. 2), and his motion to amend, (D.E. 11), are hereby granted as addressed above.

ORDERED this 7th day of June 2011.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE