IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHESTER LOWE HUFF | § | |
|     TDCJ-CID #582855 | § | |
| v. | § | C.A. NO. C-11-149 |
| | § | |
| NORRIS JACKSON, ET AL. | § | |

**OPINION AND ORDER REGARDING**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional

Institutions Division ("TDCJ"), and is currently incarcerated at the McConnell Unit in Beeville,

Texas.  Proceeding pro se, he filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging

that Defendants retaliated against him for exercising his constitutional right to file grievances.

(D.E. 1).  Pending is Defendants' motion for summary judgment.  (D.E. 38).  Plaintiff has filed a

response in opposition, (D.E. 42), and a cross-motion for summary judgment in his favor.  (D.E.

43, at 1).  Defendants filed a reply to his cross-motion for summary judgment.  (D.E. 47).  For

the reasons that follow, Defendants' motion for summary judgment is granted in part and denied

in part.  Plaintiff's claim against Defendant DelaGarza is dismissed for failure to exhaust his

administrative remedies.  His retaliation claim against Defendant Jackson shall proceed to trial

on the merits.  Plaintiff's cross-motion for summary judgment also is denied.

## I.  JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28

U.S.C. § 1331.  Upon consent of the parties, (D.E. 12, 36), the case was referred to a United

States Magistrate Judge to conduct all further proceedings, including entry of final judgment.

(D.E. 13); see also 28 U.S.C. § 636(c).

## II.  PROCEDURAL HISTORY

Plaintiff filed this action on May 4, 2011.  (D.E. 1).  Subsequently, a Spears[1] hearing was held on May 26, 2011.  On June 7, 2011, his claims of retaliation against Warden Norris Jackson and Sergeant Angelica DelaGarza were retained, and all other claims against all other named Defendants were dismissed.  Huff v. Jackson, No. C-11-149, 2011 WL 2223815 (S.D. Tex. June 7, 2011) (unpublished).

Defendant Jackson filed an answer on July 13, 2011, (D.E. 23), and Defendant DelaGarza filed her answer on July 28, 2011.  (D.E. 27).  On November 8, 2011, Defendants submitted a motion for summary judgment.  (D.E. 38).  On January 3, 2012, Plaintiff filed a response to the summary judgment motion, (D.E. 42), while simultaneously submitting a cross-motion for summary judgment in his favor.  (D.E. 43).  Defendants responded with a reply brief on February 10, 2012.  (D.E. 47).

## III.  PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that Defendants retaliated against him for filing a number of wide-ranging administrative grievances, thereby violating his First Amendment rights.  Specifically, he alleges that Defendant Jackson became irritated by his constant complaints and responded by keeping him assigned to administrative segregation.  (D.E. 1, at 7; D.E. 2, at 3).  He also claims that Defendant DelaGarza retaliated by regularly going to his cell between December 16, 2010 and January 22, 2011, shining her flashlight at his face regardless of whether he was sleeping, and kicking his door to wake him with the intention of depriving him of sleep.  (D.E. 1, at 9).

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

## IV.  SUMMARY JUDGMENT EVIDENCE

Defendants offer the following documents in support of their motion for summary judgment:

Exhibit A:      Plaintiff's Grievance Records from June 2010 to June 2011;

Exhibit B:      Plaintiff's Classification Records from June 2010 to June 29, 2011;

(D.E. 38, at 2).  In response to Defendants' summary judgment motion, Plaintiff re-alleges and swears to his own account of the events that transpired.  He also provides copies of the administrative segregation initial placement notification, (D.E. 43-1, at 5), a hearing review record for a classification proceeding that occurred on September 7, 2011, (D.E. 43, at 8-9), and an excerpt from the TDCJ's "Disciplinary Rules and Procedures for Offenders" rule guide. (D.E. 43, at 2-7).

The documented summary judgment evidence establishes the following facts relevant to the claims before this Court:

Plaintiff was recommended for placement in administrative segregation on April 23, 2010, for "express[ing] an intention to escape from custody during an interview."  (D.E. 42, at 8; D.E. 43-1, at 5).  The disciplinary report regarding this incident elaborates that Plaintiff expressed his thoughts of hitting someone with his hoe when working outside and then attempting an escape that would ultimately result in his death by officer-assisted suicide.  (D.E. 38-2, at 41).  Plaintiff's mental health clinician also reported to investigators that on April 20, 2010, he told her that "if you send me back to my unit, when I go back to work, I'll escape."  Id. at 45.

On May 5, 2010, a disciplinary hearing was held, resulting in the loss of recreation days, a reduction in line class, and a loss of good time days.  Id. at 41.  Plaintiff submitted a Step 1

3

grievance on May 12, 2010 concerning this disciplinary proceeding, complaining that there was insufficient evidence to support his punishment. Id. at 36-37. On June 10, 2010, Warden Crites denied this grievance. Id. at 37. On June 14, 2010, Plaintiff filed a Step 2 grievance, which resulted in his disciplinary case being overturned by Cheryl Lawson on July 15, 2010 due to a procedural error. Id. at 35, 59. This disciplinary case was reheard and he was again found guilty. (D.E. 38-1, at 39; D.E. 42, at 8; D.E. 43-1, at 6).

Plaintiff's continued placement in administrative segregation has been periodically reviewed by the State Classification Committee ("SCC") on July 21, 2010, March 9, 2011, and September 7, 2011. (D.E. 38-3, at 10-11, 24-25; D.E. 43, at 8-9). Each SCC review resulted in a determination that Plaintiff be retained in administrative segregation for an additional six months. Defendant Jackson presided over the July 21, 2010 SCC review. (D.E. 38-3, at 25). In addition, Plaintiff's administrative segregation restrictions have been periodically reviewed. (D.E. 38-3, at 7-9, 12-21, 23, 26).

While in administrative segregation, Plaintiff filed numerous grievances seeking to remedy a variety of complaints. There are twelve grievances on record protesting the dangerous condition of the shower facilities, (D.E. 38-1, at 3-6, 64-67), complaining that officers forced him and other inmates to continue taking showers in those hazardous conditions, (D.E. 38-1, at 29-30), expressing his dissatisfaction with the review of his grievances, (D.E. 38-1, at 31-32, 55-58; D.E. 38-2, at 25-28), objecting to his continued confinement in administrative segregation, (D.E. 38-1, at 38-39, D.E. 38-2, at 14-17), and alleging that officers threatened to poison his food and harassed him. (D.E. 38-1, at 43-46; D.E. 38-2, at 4-7).

On December 14, 2010, Nurse Ainsworth visited Plaintiff's cell, where she discovered him "standing at [the] door with [the] light on stroking his penis from front to back." (D.E. 38-1,

at 22).  Defendant DelaGarza served as the investigating officer.  Id. at 23.  After a disciplinary

proceeding, he was found guilty of masturbating in public.  (D.E. 38-3, at 3).  Plaintiff filed a

Step 1 grievance filed on December 27, 2010, challenging the disciplinary conviction for lack of

evidence.  (D.E. 38-1, at 15-16).  He also contended that Defendant DelaGarza failed to properly

conduct the investigation and that she was racially discriminating against him.  Id.  Defendant

Jackson denied this grievance on January 20, 2011 because "[t]here was sufficient evidence to

uphold the guilty verdict that you did masturbate in public."  Id. at 16.  The Step 2 grievance,

which essentially repeated his Step 1 objections, was denied on similar grounds by Cheryl

Lawson on March 17, 2011.  Id. at 28.  Despite the volume of grievances Plaintiff has filed, no

grievance against Defendant DelaGarza regarding her conduct following this investigation

appears in the record.

## V.  DISCUSSION

Defendants move for summary judgment, arguing that Plaintiff's claims have not been

fully exhausted and are barred by the doctrine of qualified immunity.  (D.E. 38, at 4).

### A.     The Legal Standard For A Summary Judgment Motion.

Summary judgment is appropriate when there is no disputed issue of material fact, and

one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Courts must consider

the record as a whole, including all pleadings, depositions, affidavits, interrogatories and

admissions on file, in the light most favorable to the non-movant.  Caboni v. Gen. Motors Corp.,

278 F.3d 448, 451 (5th Cir. 2002) (citations omitted).

The party seeking summary judgment bears the initial burden of demonstrating the

absence of a genuine issue of material fact and informing the court of the basis for its motion by

identifying those portions of the pleadings, depositions, answers to interrogatories, admissions

on file, and affidavits, if any, which support its contention. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir. 1992) (citations omitted). Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, Tex., 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted). Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof. Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.   Plaintiff Failed To Exhaust Administrative Remedies Against Defendant DelaGarza.**

Defendants move to dismiss Plaintiff's claim against Defendant DelaGarza for failure to exhaust administrative remedies. (D.E. 38, at 8-9.) They assert that Plaintiff never pursued a formal grievance alleging that Defendant DelaGarza ever came into his cell, shined a flashlight in his face, or kicked his door with the intention of depriving him of sleep after Nurse Ainsworth reported him for the disciplinary case. Id. at 8.

In the Prison Litigation Reform Act, Congress mandated that inmates must exhaust their

administrative remedies prior to filing civil rights actions:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents.  Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002); accord Irby v. Nueces County Sheriff, 790 F. Supp. 2d 552, 557 (S.D. Tex. 2011) (citations omitted).  Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process.  Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001); accord Irby, 790 F. Supp. 2d at 557 (citations omitted).  The Supreme Court has clarified that a prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 93 (2006); accord Irby, 790 F. Supp. 2d at 557 (citing Woodford).  However, an inmate's failure to exhaust is an affirmative defense that must be raised by the defendants.  See Jones v. Bock, 549 U.S. 199, 216 (2007); accord Irby, 790 F. Supp. 2d at 557 (citing Jones).

The purpose of the exhaustion requirement is to alert jail officials to problems so that the prison has a chance to address the claims before they reach federal court.  Woodford, 548 U.S. at 94.  As acknowledged by the Supreme Court, Congress intended the administrative process to "filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding."  Booth, 532 U.S. at 737.

In Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004) the Fifth Circuit discussed how

7

much detail is required in a grievance for purposes of effectively exhausting administrative

remedies.  The court noted that one of the purposes of the exhaustion requirement is to give

officials "'time and opportunity to address complaints internally.'"  Id. at 516 (citations omitted);

accord Wilbert v. Quarterman, 647 F. Supp. 2d 760, 766 (S.D. Tex. 2009) (citation omitted).  In

addition, the nature of the complaint will influence how much detail is necessary.  Johnson, 385

F.3d at 517; Wilbert, 647 F. Supp. 2d at 766 (citation omitted).  For example, a complaint about

a correctional officer should identify a specific person, whereas a complaint about a prison

condition might not need to identify any individual.  Johnson, 385 F.3d at 517; Wilbert, 647 F.

Supp. 2d at 766 (citation omitted).

        The TDCJ provides a two-step procedure for presenting administrative grievances.  Powe

v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam) (citation omitted).  An inmate properly

exhausts a claim by presenting it in Step 1 and Step 2 grievances.  See Wendell v. Asher, 162

F.3d 887, 891 (5th Cir. 1998) (citing to TDCJ Administrative Directive No. AD-03.82 (rev. 1),

Policy ¶ IV (Jan. 31, 1997)).  Inmates must submit a Step 1 grievance within fifteen days of the

alleged incident or occurrence giving rise to the grievance, and a Step 2 grievance must be

submitted within fifteen days of the date that the warden signed the Step 1 grievance.  Texas

Dep't of Criminal Justice, Offender Orientation Handbook 52 (2004), available at http://www.

tdcj.state.tx.us/publications/cid/OffendOrientHbkNov04.pdf.  A claim must be pursued through

both grievance steps before it can be considered exhausted.  Johnson, 385 F.3d at 515 (citing

Wright, 260 F.3d at 358).

        The record corroborates Defendants' contention that Plaintiff never exhausted his claim

against Defendant DelaGarza.  No grievances were submitted to the TDCJ notifying them about

any alleged misconduct by Defendant DelaGarza between December 16, 2010 to January 22, 2011.  Plaintiff admits that he failed to exhaust this claim; however, he argues that his failure to exhaust should be excused because his claims of "individualized retaliatory action" need not be exhausted, and his failure to exhaust was not his fault because Defendants' retaliatory actions successfully deterred him from filing the requisite grievances.  (D.E. 42, at 6).  He cites to a number of binding and non-binding precedent as support for his contentions.

Plaintiff first refers to Giano v. Goord, 250 F.3d 146, 150 (2d Cir. 2001), in which the Second Circuit interpreted the phrase "action ... brought with respect to prison conditions" in § 1997e to exclude "individualized retaliatory actions against an inmate."  Id. (quoting Lawrence v. Goord, 238 F.3d 182, 185 (2d Cir. 2001)).  As a result, the Giano court held that the plaintiff's claims of retaliation were "not subject to § 1997e(a)'s exhaustion requirement."  Id.  The doctrine on which Giano rests is no longer good law in any circuit.  In Porter, the Supreme Court unanimously overruled the Second Circuit's narrow interpretation of § 1997e and held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  534 U.S. at 532 (citation omitted).  Therefore, Plaintiff cannot rely on Giano or similar cases.

Plaintiff's next argument that he was not at fault for failing to exhaust his administrative remedies also lacks merit.  Pursuant to § 1997e, exhaustion is not required when the remedy is not "available," such as "where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint."  Booth, 532 U.S. at 736 & n.4; accord Dillon v. Rogers, 596 F.3d 260, 267 (5th Cir. 2010).  The Fifth Circuit has also

9

recognized that a remedy is not "available" when a prisoner's physical injury has prevented him from filing a timely grievance, and the grievance system rejects the inmate's subsequent attempt to exhaust his remedies based on the untimely filing of the grievance. Days v. Johnson, 322 F.3d 863, 867-68 (5th Cir. 2003) (per curiam), overruled by implication on other grounds by Jones, 549 U.S. at 216. Nevertheless, the Fifth Circuit takes "a strict approach to the exhaustion requirement." Id. at 866 (citation omitted). An administrative remedy is not "unavailable simply because a prisoner has not timely or properly filed a grievance and is consequently later barred from seeking further administrative relief." Dillon, 596 at 267 n.1 (citing Woodford, 548 U.S. at 83-84). Furthermore, a plaintiff's claims that the grievance system was unavailable is not sufficient to excuse the lack of exhaustion if circumstances undercut the prisoner's asserted excuse. See Ferrington v. Louisiana Dep't of Corr., 315 F.3d 529, 532 (5th Cir. 2002) (plaintiff's alleged blindness did not render administrative remedies unavailable because he had been able to file other pleadings and unrelated grievances).

Plaintiff does not assert, nor does the record reveal, any physical affliction that could have prevented him from timely submitting grievances regarding Defendant DelaGarza's allegedly abusive conduct. Indeed, he filed numerous grievances regarding other matters. There is also no evidence that the TDCJ lacked authority to provide him relief through the grievance system. Therefore, these remedies were not unavailable within the meaning of § 1997e.

Plaintiff's claim that he should be excused because "retaliatory acts deterred Plaintiff from ... further exercising his constitutional rights," (D.E. 42, at 6), is rejected because his conduct does not conform to that of a person who has been cowed into refraining from filing administrative grievances. The record demonstrates that he has submitted numerous unrelated

10

grievances since Defendant DelaGarza purportedly began harassing him on December 16, 2010, including one grievance filed during the alleged harassment period, (D.E. 38-1, at 5), and one filed a mere five days after the harassment allegedly ended.  Id. at 16.  Similar inconsistent conduct by a plaintiff was used as the basis for dismissing an unsupported argument for excuse of exhaustion in Ferrington, and Plaintiff's argument is rejected now for the same reasons.

Finally, Plaintiff urges the Court to estop Defendants from raising exhaustion as a defense.  Because the § 1997e exhaustion requirement is not jurisdictional, it may be subject to certain defenses such as waiver, estoppel, or equitable tolling.  Wright, 260 F.3d at 358 n.2.  There is, however, no reason to apply the doctrine of estoppel because there is no evidence that Plaintiff "reasonably relied on the conduct of the other [party] to his substantial injury."  Mangaroo v. Nelson, 864 F.2d 1202, 1204 (5th Cir. 1989) (quoting Moody v. United States, 783 F.2d 1244, 1246 (5th Cir. 1986)).  The fact that Plaintiff continued to file grievance after grievance highlights the conclusion that he simply neglected to exhaust his administrative remedies with respect to Defendant DelaGarza.  Accordingly, Plaintiff's retaliation claim against Defendant DelaGarza is dismissed.[2]

**C.     Defendant Jackson Is Not Entitled To Qualified Immunity.[3]**

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or

---

[2] To the extent that Plaintiff argues that any attempt to exhaust would have been futile, this theory has been foreclosed by the Supreme Court's unequivocal rejection of any implicit futility exception to § 1997e.  Booth, 532 U.S. at 741 n.6.

[3] Defendants also invoke Eleventh Amendment immunity regarding any claims in their official capacity. (D.E. 38, at 4).  Plaintiff, however, has specified that he is suing them in their individual capacity.  (D.E. 42, at 6).  Nonetheless, if Plaintiff's action could be construed as suing them in their official capacity, that claim is necessarily against the State and, as such, is barred by the Eleventh Amendment.  See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.  McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citation omitted).  "To discharge this burden, a plaintiff must satisfy a two-prong test."  Atteberry v. Nocana Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005).  "First, he must claim that the defendants committed a constitutional violation under current law.  Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  Id. (citations omitted).  While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory.  Pearson, 555 U.S. at 236-37 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

### 1.      Step 1 – Plaintiff has established a constitutional violation.

To prevail on a § 1983 claim for retaliation, "'a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.'"  Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006) (quoting McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998)).  The Fifth Circuit has explained that "[t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights."  Id. at 686 (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)).  At the same time, the Fifth Circuit has emphasized that "[p]risoners' claims of retaliation are

regarded with skepticism and are carefully scrutinized by the courts." Adeleke v. Fleckenstein, 385 F. App'x 386, 387 (5th Cir. 2010) (per curiam) (unpublished) (citing Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995)).  An inmate must allege more than his personal belief that he is the victim of retaliation.  Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).  "Mere conclusory allegations of retaliation will not withstand a summary judgment challenge.  The inmate must produce direct evidence of motivation or, in the more probable scenario 'allege a chronology of events from which retaliation may plausibly be inferred.'" Woods, 60 F.3d at 1166 (citations omitted).

> **a)** **Plaintiff has alleged the violation of a specific constitutional right.**

The First Amendment confers upon prisoners "a constitutional right of access to the courts that is 'adequate, effective, and meaningful.'"  Terry v. Hubert, 609 F.3d 757, 761 (5th Cir. 2010) (quoting Bounds v. Smith, 430 U.S. 817, 822 (1977)).  It is well-settled that a prisoner's First Amendment right of access to the courts also includes the right to seek redress through an established prison system, see Jackson v. Cain, 864 F.2d 1235, 1248-49 (5th Cir. 1989), and equally well-settled that prison officials may not retaliate against a prisoner for exercising this right.  See Woods, 60 F.3d at 1164.

Plaintiff charges Defendant Jackson with retaliating against him for exercising this very right to file administrative grievances.  (D.E. 1, at 6; D.E. 42, at 9).  Although the right of access for prisoners only extends to nonfrivolous filings of "at least arguable merit," Johnson v. Rodriguez, 110 F.3d at 311, his complaints regarding the hazardous shower were not clearly frivolous because they led to the implementation of some remedial action.  (D.E. 38-1, at 11-12). He has therefore established that a specific constitutional right is at stake with respect to the

grievances filed concerning the defective prison shower.

        **b)**      **Plaintiff has sufficiently established retaliatory intent.**

Defendant Jackson contends that Plaintiff failed to demonstrate that he possessed the requisite retaliatory intent. He argues that nothing in the record indicates he reacted to Plaintiff's grievances in an unprofessional manner, and that his assignment to administrative segregation was independent of his proclivity for filing grievances. (D.E. 38, at 6; D.E. 47, at 2). Defendant Jackson characterizes Plaintiff's argument as "a bald assertion of retaliation, based on his personal belief, and without any support in fact or law." Id.

Defendant Jackson did not play a role in the initial decision to place Plaintiff into administrative segregation. Rather, it was Major Barber who recommended that he be moved to administrative segregation for expressing an intent to escape from custody. (D.E. 43-1, at 5). Moreover, Plaintiff alleges no facts tending to show that Defendant Jackson was motivated to retaliate against him for filing grievances during the July 21, 2010 SCC review. Although he complains that Defendant Jackson responded to one of his remarks at the SCC review by telling him "you think you are a smart ass. I will show you who is smart," (D.E. 42, at 8), this alleged statement bears no connection to any grievances that he had filed in the past. At worst, it merely shows that Defendant Jackson was annoyed for reasons unrelated to Plaintiff's exercise of his constitutional rights. Therefore, Plaintiff does not establish that Defendant Jackson possessed any intent to impinge upon Plaintiff's exercise of his First Amendment right to file grievances at that time.

However, Plaintiff's allegation that Defendant Jackson later expressed frustration at the grievances he filed relating to the hazardous shower does suggest retaliatory motive. He

allegedly spoke with Defendant Jackson on February 23, 2011 concerning a hazardous shower. He avers that Defendant Jackson told him that he was tired of seeing his name come across his desk, and he threatened to keep him in administrative segregation.  (D.E. 1, at 7; D.E. 42, at 9). After this conversation, Plaintiff noted that a number of Defendant Jackson's responses to grievances he filed later were not responsive to his complaints, (D.E. 1, at 7; D.E. 42, at 9), and he complains that he remains in administrative segregation to this day.

However, each of Defendant Jackson's grievance responses were copied almost verbatim from the Grievance Investigation Worksheet, which was generated by various grievance investigators.  Compare (D.E. 38-1, at 6, 16, 58, 67; D.E. 38-2, at 7, 17, 28) with (D.E. 38-1, at 9, 19, 62, 70; D.E. 38-2, at 9, 20, 30).  This counters any notion that Defendant Jackson's grievance responses reveal any retaliatory intent.  However, the inference of retaliatory motive arising from his February 23, 2011 statements cannot be so easily dismissed.  Defendants have not provided any exculpatory explanation for why Defendant Jackson said he was tired of seeing Plaintiff's grievances and threatened to keep him in administrative segregation.  Because there remains a genuine issue of material fact concerning Defendant Jackson's intent to retaliate, Plaintiff has therefore established retaliatory intent for the purposes of this summary judgment motion.

### c)        Plaintiff has established a retaliatory adverse act.

Because it is well established that prison officials may not retaliate against a prisoner for exercising the right to file lawsuits and administrative grievances, actions that might not otherwise be offensive to the Constitution can give rise to a constitutional claim if taken in retaliation for the exercise of the protected conduct.  Woods, 60 F.3d at 1165 ("An action

15

motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate.") (citations omitted). However, the Fifth Circuit has explained that retaliation is actionable only if the retaliatory act "'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" Bibbs v. Early, 541 F.3d 267, 270 (5th Cir. 2008) (quoting Morris, 449 F.3d at 686). Some acts, even though they may be "motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights." Morris, 449 F.3d at 686. "Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." Id. For example, a job transfer from the commissary to the kitchen might be de minimis, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. Id. at 687.

Plaintiff has been in administrative segregation since April 23, 2010. (D.E. 43-1, at 5). Defendants have not argued that prolonged assignment to administrative segregation would not constitute a retaliatory adverse act, and such a retaliatory measure would deter the ordinary person from further exercising his right to pursue administrative remedies. See Hart v. Hairston, 343 F.3d 762, 764 (5th Cir. 2003) (per curiam) (holding that twenty-seven days of commissary and cell restrictions were more than de minimis, and noting with approval that other circuits have found that "action comparable to transfer to administrative segregation" was adverse) (citing Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999)); Rivera v. Salazar, No. 04-552, 2005 WL 1828594, at *5 (S.D. Tex. July 29, 2005) (unpublished) (twenty-two day confinement in administrative segregation was not de minimis) (citing Hart); aff'd 221 F. App'x 334 (5th Cir. 2007) (per curiam) (unpublished). For the purposes of this summary judgment motion, Plaintiff

has therefore shown a retaliatory adverse act.[4]

        **d)**       **Plaintiff has established causation.**

The Fifth Circuit has explained that "[c]ausation requires a showing that 'but for the retaliatory motive the complained of incident ... would not have occurred.'" McDonald, 132 F.3d at 231 (quoting Johnson v. Rodriguez, 110 F.3d at 310). The causation requirement is met if Plaintiff alleges a "chronology of events from which retaliation may be plausibly inferred." Bibbs, 541 F.3d at 272-73 (quoting Woods, 60 F.3d at 1166); Sinclair v. Fontenot, 2000 WL 729367, 216 F.3d 1080, at *2 (5th Cir. 2000) (per curiam) (unpublished) (same).

Defendant Jackson argues that Plaintiff has not alleged a chronology of events demonstrating that he would have been released to the general population absent his retaliatory efforts. (D.E. 38, at 6). He presided over only one SCC review on July 21, 2010, (D.E. 38-3, at 24-25), which occurred well before the time that Plaintiff alleges the retaliatory motive was formed. (D.E. 42, at 9). The records also fail to show that Defendant Jackson officially participated in any other proceeding that had the authority to release Plaintiff from administrative segregation. All subsequent SCC and administrative segregation level reviews were staffed by other individuals.

Plaintiff does not complain that Defendant Jackson directly kept him from being released

---

[4] In Defendants' reply brief, they maintain that Plaintiff's claims of retaliation are not actionable because he was not actually deterred from exercising his constitutional rights, i.e., filing grievances. (D.E. 47, at 3-7). Apparently, they maintain that all acts of retaliation would be de minimis if any complainant attempts to seek recovery through the grievance of legal mechanism. Such a proposition is inconsistent with the very concept of retaliation as a legal cause of action. Defendants cannot respond to a retaliation claim merely by asserting that plaintiffs only suffered a de minimis injury because they were not actually deterred from seeking administrative or legal relief, especially when the successful litigation of a retaliation claim presupposes that the prisoner will properly exhaust his administrative grievances before filing for legal relief in court. In short, Plaintiff need not show that he was actually deterred from filing grievances; he merely needs to show that an ordinary person would be deterred from further exercising his rights. Morris, 449 F.3d at 686.

to the general population.  Instead, he avers that when he went before the SCC, Defendant Jackson "twice recommended that Plaintiff remain in administrative segregation" for purportedly retaliatory purposes.  (D.E. 42, at 4-5).  Nothing in the SCC review hearing records indicates that such recommendations were considered by committee members.  On each occasion the SCC denied his request to be released to the general population, it cited Plaintiff's escape risk as the sole basis for keeping him in administrative segregation.  (D.E. 38-3, at 10-11; D.E. 43, at 8-9).

Nevertheless, it is not clear that Plaintiff remains in administrative segregation due to the independent determinations of SCC officials that he remained an escape risk.  The chronology of events, as alleged, permit the favorable inference given to the non-moving party on summary judgment review that Defendant Jackson's recommendations were <u>decisive</u> in convincing the SCC to refuse to release Plaintiff to the general population.  Because Plaintiff declares "under penalty of perjury" that his briefs and filings are true and correct, (D.E. 41), the factual assertions contained therein constitute competent summary judgment evidence.  <u>Hart v. Hairston</u>, 343 F.3d 762, 764 n.1 (5th Cir. 2003) (per curiam) (citing <u>Nissho-Iwai American Corp. v. Kline</u>, 845 F.2d 1300, 1306 (5th Cir. 1988)).  Defendants have not submitted affidavits from Defendant Jackson concerning his role in the SCC reviews of Plaintiff's classification, whether he recommended that Plaintiff continue to be held in administrative segregation, as well as whether such a recommendation would be consistent with TDCJ policy.  More importantly, Defendants have not submitted any affidavits from SCC members regarding whether their determination that Plaintiff was an escape risk was an independent decision, whether they were influenced by Defendant Jackson's recommendations, or whether they would have decided to keep him in administrative segregation regardless of those recommendations.  <u>See Johnson v. Rodriguez</u>, 110 F.3d at 312 &

n.18 (but-for causation for retaliation claim was <u>not</u> established when parole panel's decision to deny parole "would have occurred [on the basis of a permissible reason] regardless of the exercise of protected rights") (citation omitted).  As a result, there remains a genuine factual dispute regarding the reasons why Plaintiff was not released to the general population.  In the absence of any briefing or probative summary judgment evidence focusing on whether Plaintiff would have been kept in administrative segregation even if Defendant Jackson had not made any recommendations, he has failed to demonstrate that they are entitled to summary judgment.[5]

### 2.     Step 2 – Plaintiff has sufficiently shown that Defendant Jackson acted in an objectively unreasonable manner.

Because Plaintiff meets his burden on the first step of the qualified immunity inquiry as to his claim for the retaliatory deprivation of his property, it is necessary to examine the second. At this juncture, a plaintiff must articulate the asserted constitutional right more specifically. <u>Thompson v. Upshur County, Tex.</u>, 245 F.3d 447, 460 (5th Cir. 2001).  Thus, "when the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have known that the alleged acts of the defendants violated the United States Constitution." <u>Id.</u> (citation omitted).  For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right."  <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).

---

[5] Plaintiff also claims that Defendant Jackson mixed up his paperwork in an effort to delay the SCC review of his status.  To the extent that this claim has been exhausted, this allegation is nevertheless wholly conclusory. Plaintiff merely makes an unsupported assertion that Defendant Jackson created some kind of discrepancy in his documents without providing any facts about the nature of the problem or that this discrepancy is what caused the SCC's delay.  (D.E. 42, at 4).  Because he neglected to disclose any facts supporting his assertion beyond mere conclusory allegations, <u>Woods</u>, 60 F.3d at 1166, this claim is therefore dismissed.  <u>See Saucier</u>, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).

19

Under the second step, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202 (citing Wilson v. Layne, 526 U.S. 603 (1999)).  Even officers who interpret the law mistakenly but reasonably are entitled to immunity.  See Creighton, 483 U.S. at 641.  The purpose of the "clearly established law" requirement is to avoid retroactive application of "newly created legal standards" to state actors who had no reason to know they were exposing themselves to liability.  Mouille v. City of Live Oak, Tex., 977 F.2d 924, 928 (5th Cir. 1992) (citing Harlow, 457 U.S. at 819).

Defendant Jackson insists that he acted reasonably when recommending that Plaintiff be kept in administrative segregation.  (D.E. 38, at 7-8).  They argue that because Plaintiff was an escape risk, it was objectively reasonable to recommend that he be kept in administrative segregation until he was less likely to attempt an escape.  Id. at 9.  While an official would be acting within his authority by isolating a dangerous inmate from the general population, it is not clear that Defendant Jackson relied upon this permissible basis when recommending that Plaintiff remain in administrative segregation.  If Defendant Jackson acted out of retaliation, then it is irrelevant whether a legitimate reason may have existed.  See Woods, 60 F.3d at 1165 (citations omitted).

For the purposes of this summary judgment motion, Plaintiff has established that Defendant Jackson wanted to punish him for filing grievances by keeping him in administrative segregation.  (D.E. 1, at 7; D.E. 42, at 9).  In the absence of any evidence tending to negate his retaliatory intent, his motivations cannot be deemed innocent.  Defendant Jackson has also failed to show that his recommendations to the SCC played no role in shaping the committee's ultimate

decision to keep him in administrative segregation.  The right to be free from retaliation for the use of a prison grievance system was well-established at the time of the events relevant to this action.  See, e.g., Woods, 60 F.3d at 1164 & n.12.  Because the summary judgment evidence could be viewed by the trier of fact to support Plaintiff's account of Defendant Jackson's actions as being objectively unreasonable, he is therefore not entitled to qualified immunity.  See Davis v. McKinney, 518 F.3d 304, 317-18 (5th Cir. 2008) (rejecting qualified immunity because plaintiff demonstrated there were genuine fact issues as to whether retaliation occurred, which operated to preclude the conclusion that defendants' actions were objectively reasonable on summary judgment review); Hart, 343 F.3d at 765 (defendant was not entitled to qualified immunity because "genuine issues of material fact remain as to the various elements of this court's retaliation standard" and because his conduct as alleged by plaintiff was not objectively reasonable) (citations omitted).

## VI.  CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment, (D.E. 38), is GRANTED in part and DENIED in part.  Consistent with this Order, Plaintiff's claim of retaliation against Defendant Jackson for recommending that he stay in administrative segregation shall proceed to trial.  All other claims are dismissed.  Plaintiff's cross-motion for summary judgment, (D.E. 43, at 1), is DENIED consistent with this Order.

ORDERED this 12th day of March 2012.

BRIAN  L.  OWSLEY
UNITED STATES MAGISTRATE JUDGE